## SIMON & PARTNERS LLP

THE FRENCH BUILDING
551 FIFTH AVENUE
NEW YORK, NEW YORK 10176
www.simonlawyers.com

(212) 332-8900

BRADLEY D. SIMON
BRIAN D. WALLER
KENNETH C. MURPHY

JONATHAN STERN

COUNSEL
PAMELA B. STUART
NEAL M. SHER
GENEVIEVE SROUSSI
STEPHENIE L. BROWN
HARRIET TAMEN

FAX: (212) 332-8909

NEW YORK
WASHINGTON, D.C.
PARIS

March 5, 2014

Via ECF

Hon. Paul G. Gardephe
United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

Re:  *U.S. v. Van Hise, et al.*
     Case No.: 12-cr-847 (PGG)

Dear Judge Gardephe:

Before commencement of trial, the Government moved *in limine* to elicit testimony from an FBI agent regarding the contents of a video called "Pain 35". Mr. Asch opposed that motion.

The Court ruled:

> I do believe that in this instance it's appropriate to have the agent testify generally about the fact that items shown in the video were similar to items that Mr. Asch brought to the meeting with the undercover.

(Tr. 521-23). Mr. Asch's counsel requested:

1

SIMON & PARTNERS LLP

> that the government should be precluded from making any suggestion that this video is anything other than consensual, not that the acts occurred, not saying that these were depictions, fake blood, you know, were not actually doing the acts but these were not unwilling participants. The women in the video were not unwilling participants.

(Tr. 523).

The Court agreed stating:

> I think that's fair and the government agrees. So thank you for reminding us of that, Mr. Waller. I think it's entirely appropriate.
>
> And just so we're clear, it seems to me that it would be worthwhile to elicit from the witness that the activity appears to be consensual. Just so that there's no chance that the jury is going to come away with the impression that these women were kidnapped and were the unwilling victims. What is shown the on the video the government will elicit that the conduct appears to be consensual on the part of every one shown on the video.

(Tr. 523-24).

On March 5, 2014, Special Agent Jason Floyd testified about the video in direct contravention of the Court's directive. In response to a question whether the women in this video appeared to be consenting, Agent Floyd testified: "They do appear to be consenting. However, in my training and experience, they appear sedated." Although Your Honor provided clear instructions to the jury to disregard such a statement, for the reasons set forth below, we believe that Agent Floyd's statement irreversibly prejudiced the defendant, and a mistrial is necessary.

## ANALYSIS

A mistrial may be granted when a defendant faces actual prejudice due to the introduction of improper testimony. *United States v. Colombo*, 909 F.2d 711, 713-14 (2d Cir. 1990). Such prejudice exists where "there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be

2

SIMON & PARTNERS LLP

devastating to the defendant." *Greer v. Miller*, 483 U.S. 756, 767 (1987). The Second Circuit has previously held that where the Government improperly links a defendant to an uncharged rape, a mistrial is necessary. *Colombo*, 909 F.2d at 715.

Agent Floyd testified that based on his "training and experience" the women in the Pain 35 video "appear sedated." Such testimony is clearly inflammatory and impossible to disregard, for four reasons. First, in this instance, the jury is not merely being asked to disregard a certain fact, they are being told to draw a conclusion that is the *opposite* of the suppressed testimony. Testimony regarding the Pain 35 video was deemed admissible only on the condition that the government elicit testimony that makes clear that there is no basis to believe that the Pain 35 video was anything but consensual. Agent Floyd provided testimony that indicated precisely the opposite. His testimony was essentially that while the women in the video *appear* to be consenting to an untrained eye, based on his law enforcement training and experience, the women appeared sedated. By qualifying the first part of the statement in this way, Agent Floyd conveyed that the women were not actually consenting because they had been sedated. In a usual case, a jury is asked to simply disregard an inappropriate bit of testimony. In this case, the jury is being instructed to accept the *opposite* of that testimony. That is a drastically more difficult task for the jury than to simply "forget what they heard." The clear intention of the Court's directive was to convey to the jury that, despite the disturbing nature of what is depicted in the video, the participants in the video were nonetheless actors who were consenting to the treatment they received.

Second, the crux of Mr. Asch's defense is that, though his fantasy life may be objectionable, he never intended to actually harm anyone. To suggest that he had any involvement with a video recording of an actual event of rape and torture completely undercuts

3

SIMON & PARTNERS LLP

Mr. Asch's defense. Moreover, given that Mr. Asch had previously professed a desire to videotape "scenes," it is possible that the jurors might conclude that Asch himself created the Pain 35 video.

Third, Agent Floyd deliberately invoked his authority as an FBI agent to bolster the credibility of his own testimony. He did not merely testify that he believed the women in the Pain 35 video were sedated – he asserted that it was based on his "training and experience" as an agent. This significantly increases the likelihood that the jury will take it into account notwithstanding the Court's instructions.

Fourth, it will be impossible for the jury to disregard what they heard about the Pain 35 video because the Government has and will continue to frame that video as a "blueprint" for Mr. Asch's alleged conspiracy. Given that the jury will be continually reminded of the contents of the Pain 35 video, it will be virtually impossible for them to set aside what they heard about the video in considering the Government's case.

The actual prejudice to Mr. Asch is obvious. Agent Floyd's testimony suggests that Mr. Asch possessed a video in which women were really tortured against their will. The fact that the women "appeared sedated" suggests that they were drugged in order to get them to succumb to the acts committed against them in the video. Since the issue in this case is whether Mr. Asch really intended to kidnap and rape a woman, or only fantasized about it in a role playing scenario, his possession of video depicting actual victims of a torture, couldn't be more prejudicial. It is one thing to possess pornography of highly disturbing acts and images when the players in the video are willing participants; it is another thing entirely to possess video of real women being tortured against their will.

Simon & Partners LLP

Moreover, there has been testimony in the case about Mr. Asch's alleged intention to drug a victim. Thus, the video becomes much more prejudicial to Mr. Asch if the jury is under the impression that the women in the Pain 35 video were similarly drugged so that they could be tortured. The errant fact of "sedation" would make the video far more similar to the acts which Mr. Asch is alleged to have intended to commit.

Furthermore, this violation of the Court's ruling went beyond a mere inadvertent error. There could have been no misunderstanding of the question asked on the Agent's part as the question was asked in an entirely leading manner. Consistent with the Court's instructions, Ms. Waxman unambiguously asked, "Do the women in this video appear to be consenting?" The question required an answer of either "yes" or "yes, the women in the video appear to be consenting." Here, the witness felt the need to qualify his answer by volunteering his professional opinion that while the women *appeared* to be consenting to the untrained eye, it appeared to him that they had been sedated. Such a qualification flagrantly flouted the Court's instructions.

In its opposition to Mr. Asch's motion for a mistrial (Dkt 269), the government makes some unfounded and peculiar arguments. First, the government repeatedly states that Agent Floyd's remark that the women appeared sedated, while admittedly in violation of the Court's instruction, was nonetheless factually accurate. There was nothing in the video that indicated that the women were sedated and in any event, that conclusion was Agent Floyd's opinion, not a fact. Even had the Court not given any limiting instruction regarding the video, Agent Floyd's testimony was still objectionable and would have likely been inadmissible as improper opinion testimony and for a lack of foundation for the basis of his opinion. The government further states: "[I]ndeed, it is very likely that a woman who consented to undergo such torture would

5

S‌IMON & P‌ARTNERS LLP

seek to dull the pain, including by ingesting sedatives, just as any other person might be sedated before undergoing oral surgery at the dentist's office to which she had previously consented." This argument is irrelevant, purely speculative and shows a genuine lack of understanding of the practice of masochism.

The government also argues that even if the women in the video were non-consenting, the jury could not conclude that "Asch himself was involved in victimizing the women" because he only possessed, but did not produce the video. By that logic, a person who possesses child pornography, but did not produce it, could not be said to have victimized the children depicted therein—a position that the government would invariably disagree with.

## Conclusion

For the foregoing reasons, we respectfully request that the Court declare a mistrial.

Respectfully submitted,

SIMON & PARTNERS LLP

By:  Brian D. Waller
     Jonathan Stern

*Attorneys for Christopher Asch*

cc:   AUSA Hadassa Waxman (via
      AUSA Brooke Cucinella
      Alice Fontier, Esq.
      Elizabeth Macedonio, Esq.

6