USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 11, 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

MICHAEL VAN HISE and ROBERT
CHRISTOPHER ASCH,

Defendants.

**MEMORANDUM
OPINION & ORDER**

(S4) 12 Cr. 847 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Defendant Robert Christopher Asch is charged with two counts of conspiracy to

commit kidnapping in violation of 18 U.S.C. § 1201(c). ((S4) 12 Cr. 847 (Dkt. No. 204)) Trial

began on February 27, 2014. On March 5, 2014, Asch made an oral motion for a mistrial due to

improper testimony concerning a sado-masochistic and pornographic videotape found during a

search of his apartment. (Trial Transcript ("Tr.") 752) Although the Court sustained Asch's

objection and issued a curative instruction, Asch argues that his defense has been "irreversibly

prejudiced." (Def. Br. (Dkt. No. 272) at 2) For the reasons set forth below, Asch's motion for a

mistrial will be DENIED.

### BACKGROUND

Prior to trial, the Government moved in limine to elicit testimony concerning a

VHS tape entitled "Pain 35" that the FBI had recovered during a search of Asch's apartment.

(Govt. MIL (Dkt. No. 237) at 6-8; GX 703A) The video shows two men using, inter alia,

clamps, a spreader bar, rope, paddle and needles to inflict pain on two nearly-naked, bound and

restrained women.[1] (Tr. 752-64) The Court has reviewed the video in camera. It is extremely

graphic. For example, the men are shown inserting needles into the buttocks, breasts and vagina

---

[1] The FBI recovered two copies of this video from Asch's apartment. (Tr. 750)

of one of the women, and the video records blood dripping from the woman's vaginal area. (Tr. 762)

Given the video's graphic nature, the Government did not seek to introduce the video itself. (Govt. MIL (Dkt. No. 237) at 6 (acknowledging that the "content of the Pain 35 video will undoubtedly be shocking and disturbing to the members of the jury")) Instead, it proposed to elicit a description of the video from an FBI agent familiar with its contents. (Id. at 2) The Government's motion was the subject of extensive briefing and discussion with the Court. (See id. at 6-8; Def. MIL Opp. (Dkt. No. 246) at 4-7; Jan. 30, 2014 Hearing Tr. 15-23; Feb. 24, 2014 Hearing Tr.; Tr. 520-28) Asch's counsel opposed the introduction of any testimony concerning the contents of the video. (Def. MIL Opp. (Dkt. No. 246) at 4-6)

The Court ruled that the Government would be permitted to elicit testimony about the content of the video. (Tr. 521) Many of the items used to inflict pain on the women in the video are similar to items that Asch brought to meetings with FBI undercover agents on March 13, 2013, and April 15, 2013. (Tr. 533-540, 544-52, 576-77, 579, 582-91) For example, the needles, clamps, spreader bar, rope and paddle that are shown and used in the video are very similar to items that Asch brought with him to the meetings with the undercover agents. (Compare GX 603Q (clamps), 603S (clamps), 603W (needles), 604D (rope), 604E (rope), 604F (skewers), 604G (spreader bar), 604J (meat tenderizer) with GX 703A (Pain 35 Video)) The ostensible purpose of these meetings was to discuss the kidnap, rape, torture and murder of a specific female victim, and to conduct surveillance of this woman.[2] (Tr. 504, 576) Asch also discussed the use of these items in a number of intercepted conversations introduced at trial. (See, e.g., GX 405, 415) The Court concluded that the use of these items on the video was

---

[2] Unbeknownst to Asch, the purported female victim was an FBI undercover agent. (Tr. 683)

probative of Asch's intent in purchasing these same items and in bringing them to the meetings with the undercover agents. (Tr. 521)

After the Court's ruling, Asch noted that the activity shown in the video appears to be consensual and argued that the jury should not be led to think otherwise. (Tr. 523) Asch had raised a similar concern at the outset of the trial, and the Government in response indicated that it did not intend to suggest to the jury that the activity in the video was non-consensual. (Feb. 24, 2014 Hearing Tr.) After the Court's ruling, Asch's counsel again requested "that the Government . . . be precluded from making any suggestion that this video is anything other than consensual." (Tr. 523) In response to this proposal, the Court ruled:

> I think that's fair and the Government agrees. So thank you for reminding us of that, Mr. Waller. I think it's entirely appropriate. And just so we're clear, it seems to me that it would be worthwhile to elicit from the witness that the activity appears to be consensual. Just so that there's no chance that the jury is going to come away with the impression that these women were kidnapped and were the unwilling victims. . . . [T]he Government will elicit that the conduct appears to be consensual on the part of everyone shown on the video.

(Tr. 523-24)

The following day, FBI agent Jason Floyd testified about certain videotapes recovered from Asch's apartment. (Tr. 746-52, 761-66) During his testimony, the Government asked whether the FBI had found "pornography involving rape":

> Q. And what about pornography involving rape, did you view any of – did you view that in connection with your review of the items seized from Mr. Asch's apartment?
>
> A. The rape pornography involved one or more male attackers violently raping, attacking one or more female victims.

(Tr. 749-50) The Government then asked Agent Floyd about the "Pain 35" video. Consistent with the Court's instruction, the Government asked whether the conduct shown on the video appeared to be consensual:

3

Q. Do the women in this video appear to be consenting?

A. They do appear to be consenting. However, in my training and experience, they appear sedated.

Q. And I'd like for you please, Agent Floyd, to describe to the jury the Pain 35 video that you viewed?

A. Okay.

(Tr. 751)

Asch's counsel then objected and requested a sidebar. At the bench, Asch's counsel moved for a mistrial based on Agent Floyd's testimony about the "rape" videos and his comment that the women in the "Pain 35" video appear to be sedated. With respect to the "rape" videos, Asch's counsel argued that the agent's testimony

> made it sound like these are actual rapes taking place. And a rape has to be, by definition non-consensual. So the way he described it, it makes it sound like these women were actually being raped as opposed to being – appearing to be raped in the video, and there is a big distinction.

(Tr. 752) In response to this objection, the Government stated that it would elicit from the agent that the "rape" videos were "professionally made videos with actors." (Tr. 753)

As to the agent's testimony concerning the "Pain 35" video, Asch's counsel argued that "for [the agent] to get up there and say these women appear to be sedated is so prejudicial that – I mean, it completely flies in the face of the Judge's ruling [in] this case." (Tr. 753)

The Court ruled that Agent Floyd's testimony that the women "appeared sedated" violated its earlier ruling about the consensual nature of the activities shown on the video. (Tr. 754) The Court further stated that it intended to strike the testimony from the record and to instruct the jury to disregard it. (Id.) After soliciting comments from counsel as to an appropriate curative instruction, the Court gave the following instruction to the jury:

Ladies and gentlemen, with respect to the testimony that was just given about the Pain 35 video, there was a reference to sedation – to the fact that the women were sedated. I'm directing that that testimony be stricken from the record. It is to be entirely disregarded by you. It is to play no role in your deliberations. Let me further tell you, let me further instruct you that the parties here agree that the conduct shown on the video is in fact consensual; that is to say, that the women shown on the video are in fact consenting to the conduct engaged in by the men. That has been agreed to by both sides. There was no dispute about that, and you are to accept that fact for purposes of your deliberations.

(Tr. 761) The Government then elicited from Agent Floyd that the women in the "rape" videos were consensual participants who were actors. (Tr. 761-62)

The Court reserved decision on Asch's mistrial motion and invited briefing from the parties.

## DEFENDANT ASCH'S MISTRIAL MOTION

On March 5, 2014, Asch and the Government submitted briefs concerning Asch's motion for a mistrial. Asch argues that Agent Floyd's testimony about sedation is "clearly inflammatory and impossible [for the jury] to disregard."[3] (Def. Br. (Dkt. No. 272) at 3) In arguing that the Court's instruction did not cure the unfair prejudice purportedly caused by Agent Floyd's reference to sedation, Asch asserts that

(1) "the jury is not merely being asked to disregard a certain fact, they are being told to draw a conclusion that is the opposite of the suppressed testimony";

(2) the stricken testimony "completely undercuts Mr. Asch's defense" that he was only fantasizing and never intended to actually harm anyone;

(3) because Agent Floyd invoked his experience as an FBI agent, this "significantly increases the likelihood that the jury will take [the testimony] into account notwithstanding the Court's instructions"; and

---

[3] Asch's brief mentions the testimony about the "rape" videos only once in passing. (See Def. Br. (Dkt. No. 272) at 3). To the extent that Asch continues to argue that the testimony about the "rape" videos was unfairly prejudicial, the Court finds that the Government's follow-up question and answer – which make clear that the "rape" videos involved consensual participants who were performing as actors – cured any prejudice arising from the initial questions concerning this subject.

5

(4) the jury will disregard the Court's instruction because the Government "has and will continue to frame the video as a 'blueprint' for Mr. Asch's alleged conspiracy."

(Id. at 3-4) (emphasis in original)

The Government contends that (1) it did not intentionally elicit the testimony in contravention of this Court's earlier ruling; (2) Agent Floyd's testimony about sedation was not misleading and will not unfairly prejudice Asch; and (3) the Court's curative instruction is sufficient to cure whatever unfair prejudice the sedation remark might have caused Asch. (Govt. Br. (Dkt. No. 269) at 5-6, 10-14)

## DISCUSSION

### I.      LEGAL STANDARD

"Courts have the power to declare a mistrial whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." United States v. Klein, 582 F.2d 186, 190 (2d Cir. 1978) (internal quotations and citations omitted). The Second Circuit has instructed, however, that the power to declare a mistrial "ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes and in the exercise of sound discretion." Id. (internal quotations and citations omitted). Moreover, "a mistrial is warranted only upon a showing of actual prejudice." United States v. Gaskin, 364 F.3d 438, 463 (2d Cir. 2004) (citing United States v. Abrams, 137 F.3d 704, 708–09 (2d Cir. 1998) (per curiam)).

Where, as here, the trial judge sustains defense counsel's objection and instructs the jury to disregard the improper testimony, the jury is presumed to follow the court's instruction "'unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be

6

devastating to the defendant.'" United States v. Mussaleen, 35 F.3d 692, 695 (2d Cir. 1994)

(quoting Greer v. Miller, 483 U.S. 756, 766 n.8 (1987) (internal quotation marks and citations

omitted)). The Second Circuit frequently finds that a curative instruction is sufficient to address

improper testimony. See, e.g., United States v. Warren, 306 F. App'x 682, 684 (2d Cir. 2009)

(upholding a district court's denial of a mistrial motion where the court instructed jurors to

disregard testimony concerning the defendant's prior arrest); United States v. Elfgeeh, 515 F.3d

100, 127 (2d Cir. 2008) (finding curative instructions sufficient where an FBI agent improperly

linked a defendant to terrorism in a prosecution for operating an unlicensed money-transfer

business and for structuring financial transactions); United States v. Espinoza-Mora, 205 F.

App'x 886, 891-92 (2d Cir. 2006) (finding that a co-conspirator's testimony that the defendant

had dealt drugs on prior occasions did not warrant a mistrial because the district court had given

"an appropriate limiting instruction, striking that testimony from the record and instructing the

jury to disregard it"); United States v. Nixon, 779 F.2d 126, 133 (2d Cir. 1985) (in a heroin

conspiracy case, finding curative instruction sufficient where co-conspirator twice testified that

the defendant had previously been arrested for smuggling heroin); United States v. Vita, 294

F.2d 524, 526 (2d Cir. 1961) (denial of mistrial motion proper where the district court instructed

jurors to disregard improper testimony concerning the defendant's prior drug trafficking and

participation in a bank robbery).

II.     **ANALYSIS**

    A.     **The Testimony Was Improper**

        Agent Floyd's testimony was improper both because it violated the Court's prior

ruling and because it lacked a proper evidentiary foundation. In response to the prosecutor's

question, Agent Floyd testified that the women in the video appeared to be consenting, but he

immediately qualified this statement by giving his unsolicited and unsubstantiated opinion that the women appeared to be sedated. The Government laid no foundation for Agent Floyd to give such an opinion. In any event, the assertion – which is not consistent with this Court's review of the video – undermines the parties' stipulation that the conduct shown on the video is consensual.

The Government's argument that Agent Floyd's testimony – while in violation of the Court's order – was nonetheless accurate (Govt. Opp. (Dkt. No. 269) at 3, 5, 6) is both unpersuasive and non-responsive to the issue at hand. Nothing in the video demonstrates that the women were sedated, and the Government does not even argue that Agent Floyd was competent to offer an opinion on this issue.

While the testimony was not proper, Asch's arguments that the jurors were left with the impression that the video depicts non-consensual acts, and that the jury "might conclude that Asch himself created the Pain 35 video," are not persuasive. (Def. Br. (Dkt. No. 272) at 3-4) Nothing in the record suggests that Asch played any role in the production of the "Pain 35" video. Moreover, as discussed below, the Court's curative instruction is sufficient to address any suggestion that the activities shown on the video were not consensual.

**B.      The Court's Curative Instruction Was Sufficient to Cure Any Prejudice to Asch**

The Second Circuit has repeatedly affirmed convictions where a district court has, in response to improper testimony, issued a curative instruction rather than grant a mistrial motion. In a number of these cases, the improper testimony involved highly prejudicial subjects such as drug trafficking, terrorism, and other crimes of violence. For example, in United States v. Elfgeeh, which was tried after the September 11, 2001 terrorist attacks, an FBI agent gave testimony suggesting that one of the defendants "was suspected of funding terrorism." Elfgeeh,

515 F.3d 100, 127 (2d Cir. 2008). The district court promptly gave a curative instruction. Id. In rejecting that defendant's appeal, the Second Circuit noted that it "s[aw] no indication that the jury was unable or unwilling to heed the court's repeated instructions that terrorism was not an element in the case, that the case was about alleged banking-law violations, and that the jury must consider only the evidence admitted at trial." Id.

Similarly, in United States v. Mussaleen – which involved a prosecution for transporting an illegal alien – "[t]he district court cautioned [the victim], at the outset of her testimony (and outside the presence of the jury), to make no reference to [the defendant's] possession of a gun during the time he was transporting her." Mussaleen, 35 F.3d 692, 694 (2d Cir. 1994). The victim nonetheless "blurted out the non sequitur, '[the defendant] was there with the gun.'" Id. at 695. The court rejected the defendant's motion for a mistrial, and instead issued a curative instruction. Id. Later, in that same trial, a detective testified that when he approached the defendant's home he had a warrant for the defendant's arrest on an unrelated matter. Id. The district court again denied a mistrial motion and issued another curative instruction. In upholding the conviction, the Second Circuit explained that "the district court gave appropriate curative instructions following the blurted testimony of [the victim] and [the detective]. . . . Even if the evidence against [the defendant] had been less strong, neither comment is so 'devastating' as to overcome the assumption that the jury will follow the court's instructions." Id.

Here, in addition to sustaining the objection, striking the testimony, telling the jurors that they must completely disregard the reference to "sedated," and instructing the jury that this remark should "play no role in your deliberations," the Court informed the jury that the parties agreed that the activity depicted in the video was consensual. (Tr. 761) This curative instruction was more than adequate to cure whatever unfair prejudice Agent Floyd's remark

9

might have caused Asch, and there is no reason to believe that the jury is incapable of following that instruction.[4]

### C. The Stricken Testimony is Not Devastating to Asch's Defense

Agent Floyd's "sedated" remark is not a "devastating" blow to Asch's fantasy defense. While Agent Floyd informed the jury that the "Pain 35" video had been recovered from Asch's apartment, there has been no suggestion at trial that Asch was involved in the production of that video in any fashion. Moreover, even if the jury was somehow unable to follow the Court's curative instruction – an argument for which there is no support – the mere fact that Asch possessed a video of sedated women engaged in acts of sado-masochism would not demonstrate that he intended to commit a real kidnapping. While his possession of such a video might suggest that he is interested in "real" acts of sexual torture that might involve sedated women, there is already abundant evidence in the record concerning Asch's interest in sexual torture. The jury has heard numerous tape recordings, and read numerous email exchanges, in which Asch graphically and in detail describes his desire to perform horrific acts of sexual violence and torture on women and children. There is thus no likelihood that evidence of his possession of a video showing sado-masochistic activities – even assuming that the video showed sedated women – would significantly affect the viability of his fantasy defense, much less prove "devastating" to that defense.

---

[4] Asch argues that Agent Floyd bolstered his testimony by referring to his training and experience as an FBI agent, thus "increas[ing] the likelihood that the jury will take [his testimony] into account notwithstanding the Court's instructions." (Def. Br. (Dkt. No. 272) at 4) Asch offers no support for his claim that a jury is less likely to follow a curative instruction where the testifying witness is a law enforcement officer. The Second Circuit has endorsed the use of a curative instruction even where improper testimony was elicited from a law enforcement officer. See, e.g., Elfgeeh, 515 F.3d at 127; Mussaleen, 35 F.3d at 694.

Asch cites United States v. Colombo, 909 F.2d 711, 715 (2d Cir. 1990), for the proposition that a mistrial is warranted "where the Government improperly links a defendant to an uncharged rape." (Def. Br. (Dkt. No. 272) at 2-3) The facts of Colombo are in no way comparable to the facts and circumstances here.

In Colombo, defendant William Klan was alleged to have conspired with members of an organized crime family to commit robberies. Colombo, 909 F.2d at 712. Acting on a tip from Klan, gang members entered the home of Harold Finley, one of Klan's former clients, in search of gold bars and cocaine. Id. Finding no gold or cocaine, the men proceeded to rape and sodomize Finley's wife. Id. At Klan's trial, the Government sought to introduce testimony concerning the uncharged rape as background to the conspiracy. The district court, over the defendant's objection, permitted the testimony but instructed the jury to consider it "only as background for the surrounding events and [not as] evidence in determining its verdict." Id. at 715. The Second Circuit found that the ordinary presumption that juries follow limiting instructions was "negated" in this instance:

> Evidence linking a criminal defendant to a rape and sodomy does more than tarnish a defendant's character before the jury; it brands him as the kind of reprehensible person who would "sic" his criminal confederates on an innocent victim of the robbery. With such a negative vision of the defendant, there is an "overwhelming probability" that the jury was unable to consider dispassionately the evidence of such a violent crime simply as background for the surrounding events. By its very shocking nature, it becomes the centerpiece of the trial.

Id. The Second Circuit went on to conclude that "in the context of a very close case, where the prosecutor improperly dwelled on the rape and sodomy of a robbery victim – despite his acknowledgment of the risk and assurance that he would not introduce such proof – the trial court's limiting instructions were in our view insufficient to render the resulting error harmless."
Id.

Colombo is distinguishable from this case on several grounds. First, the trial court in Colombo improperly permitted testimony concerning the uncharged rape. Id. at 713 ("In our prior opinion we determined that this evidence was not properly admitted under Fed. R. Evid. 403 because 'any use of this evidence as background, given its slight relevance, was "substantially outweighed by the danger of unfair prejudice."'") (quoting United States v. Colombo, 869 F.2d 149, 153 (2d Cir. 1989)). In contrast, this Court made clear that the Government could not elicit testimony that the women in the video were non-consenting victims. Second, the improperly admitted evidence in Colombo directly linked the defendant to the uncharged rape. Indeed, the prosecutor asked the defendant "a number of times about his knowledge of the 'rape and sodomy.'" Id. at 714. Here, there has been no suggestion that Asch had any involvement in producing the video or any connection to the conduct the video depicts. Third, in Colombo, the court noted that "[t]he jury's resolution of this case rested upon whether it credited the testimony of [the government's primary witness] or Klan." Id. at 715. Hence, "because Klan's credibility was critical, the admission of this kind of evidence demolished his defense." Id. Here, Asch has elected not to testify, and he cannot credibly assert that his fantasy defense has been "demolished" by Agent Floyd's testimony. Fourth, for the reasons discussed above, Agent Floyd's "sedated" remark – when viewed in the trial's broader context – is not so "shocking" as to become the trial's "centerpiece." Finally, the Court ordered that the "sedated" remark be stricken from the record and instructed the jury that all parties agreed that the activity depicted in the "Pain 35" video was consensual. (Tr. 761) Under these circumstances, the stricken testimony does not hinder in any way Asch's attempt to convince the jury that he never

intended to commit an actual kidnapping.[5]

## CONCLUSION

For the reasons stated above, Defendant Asch's motion for a mistrial is denied.

The Clerk of the Court is directed to terminate the motion (Dkt. No. 272).

Dated: New York, New York
      March 11, 2014

SO ORDERED.

_Paul G. Gardephe_
Paul G. Gardephe
United States District Judge

---

[5] Asch also argues that the jury will not be able to ignore the stricken testimony "because the Government has and will continue to frame th[e] video as a 'blueprint' for Mr. Asch's alleged conspiracy." (Def. Br. (Dkt. No. 272) at 4) No such argument was made in the Government's opening, nor has the Government's witness examinations revealed any such theme. The only reference to the "Pain 35" video at trial occurred during Agent Floyd's testimony.